or collusion arises, as in Hoes v. New York, N. H. & H. R. R. Co., 173 N. Y. 435, 66 N. E. 119; Pietraroia v. N. J. & H. R. R. & F. Co., 131 App. Div. 829, 116 N. Y. Supp. 249; Id., 197 N. Y. 434, 91 N. E. 120. In the latter case, Judge Gray, writing for the majority of the court, said:

"As a question of policy, it is intolerable that our courts should be impeded in the administration of justice, and that the people of this state should be burdened with expense, in redressing wrongs committed in another state, for the benefit, solely, of its citizens, and where the remedy is in the enforcement of its statutes."

[4] It seems to me that it is within the discretion of the Supreme Court to decline jurisdiction in a case like this, and that that discretion should be exercised, unless it appears that the action is being prosecuted for the benefit of citizens of this state, or, if by a resident administrator properly appointed, for the benefit of nonresidents, that the latter would at least have a cause of action in this state, if the injury had occurred here. The Special Term was plainly justified in denying the plaintiff's motion.

The order should be affirmed, with $10 costs and disbursements. All concur.

---

GOLDAN v. DELAWARE & E. RY. CO. et al.

(Supreme Court, Appellate Division, First Department. April 7, 1911.)

FRAUD (§ 44*)—PLEADING—ALLEGATIONS OF FRAUD IN GENERAL.

Public Service Commission Law (Laws 1907, c. 429), § 55, provides that a railroad may issue bonds payable at periods of more than 12 months after date, provided, and not otherwise, that it secures from the commission an order authorizing the issue of such bonds, but is silent as to the validity of bonds issued without authority, when in the hands of bona fide holders, and section 56 provides penalties for violations of the act. Plaintiff, in his action against a railroad company and its directors for fraud, alleged that his assignor was employed to procure the underwriting of defendants' bonds for an agreed commission, and that he procured an underwriting agreement which was accepted by defendants, and which was not binding on the underwriters until a receipt for the commission was attached thereto, and that plaintiff was induced to accept bonds of the company in place of his contract debt, at the time when it had cash sufficient to pay the amount of commission, on defendants' representations that they were authorized by law and were valid obligations against them; whereas, in fact, the commission had expressly forbidden defendants from issuing bonds in payment of the commission. *Held*, that as the plaintiff had not shown the invalidity of the bonds, or that defendant could plead its ultra vires act as a defense to a suit on the bonds by a bona fide holder, his complaint stated no cause of action.

[Ed. Note.—For other cases, see Fraud, Dec. Dig. § 44.*]

Appeal from Special Term, New York County.

Action by E. Ormond Goldan against the Delaware & Eastern Railway Company and F. F. Searing and others. From an interlocutory judgment overruling a demurrer to the complaint, defendants appeal. Judgment reversed, and demurrer sustained, with leave to plead over.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, SCOTT, and MILLER, JJ.

Edward J. Welch, for appellants.
Julian B. Shope, for respondent.

MILLER, J. This is an action against the defendant railway company, its officers and directors, for. fraud. It is alleged that the plaintiff's assignor and one Enthoven on the 13th day of August, 1909, were employed by said defendant company to procure an issue of bonds of the par value of $3,500,000 to be underwritten under an agreement whereby each was to have a commission of 2½ per cent., amounting to $87,500; that an underwriting agreement was procured which was accepted and approved by said company, but which provided that it should not become binding upon the underwriters until a receipt in full satisfaction of any claim of the plaintiff's assignor and said Enthoven for brokerage was attached thereto; that the claim of said assignor was reduced to $85,500; that the plaintiff was induced to accept bonds of said defendant company to the par value of $85,500 upon the representation by the defendants that they were authorized by law to issue and deliver the bonds for that purpose, and that the bonds, so issued and delivered, were good and valid obligations, whereas in fact the Public Service Commission had not only not authorized the issuance of said bonds, but had, by an order made on July 23, 1909, expressly prohibited the said defendant company from issuing bonds for the payment of said brokerage; that, at the time said bonds were so accepted by the plaintiff, the defendant company had sufficient available cash in its treasury to pay the plaintiff's claim; that, by withholding the receipt which was necessary to give the underwriting agreement validity, the plaintiff could have exacted a payment in cash; that said defendant company has since become insolvent, and a receiver of its property has been appointed. Wherefore it is alleged that the plaintiff has been damaged in said sum of $85,500.

Section 55 of the Public Service Commission Law (Laws 1907, c. 429) provides:

"A common carrier, railroad corporation or street railroad corporation organized or existing, or hereafter incorporated, under or by virtue of the laws of the state of New York, may issue stocks, bonds, notes or other evidence of indebtedness payable at periods of more than twelve months after the date thereof, when necessary for the acquisition of property, the construction, completion, extension or improvement of its facilities, or for the improvement or maintenance of its service or for the discharge or lawful refunding of its obligations, provided and not otherwise that there shall have been secured from the proper commission an order authorizing such issue, and the amount thereof and stating that, in the opinion of the commission, the use of the capital to be secured by the issue of such stocks, bonds, notes or other evidence of indebtedness is reasonably required for the said purposes of the corporation."

Section 56 provides the penalties for a violation of any of the provisions of the act or for the disobedience of any order, direction, or requirement of the commission. The statute does not provide that

bonds in the hands of bona fide holders, issued without authority of the proper commission, shall. be void.

. It is to be observed that the statute only applies to stocks, bonds, notes, or other evidence of indebtedness, payable at periods of more than 12 months after the date thereof. The complaint does not allege when the bonds in question were payable. But passing that question, and assuming that the complaint is sufficient in other respects, I think that it is insufficient to show that the plaintiff has been damaged in the sum of $85,500 or in any sum whatever. Undoubtedly the Public Service Commission had jurisdiction to pass on the issuance of the bonds, the amount thereof, and the purpose for which they could be used, and if bonds were issued in disobedience of the order of the commission, or without the authority of the commission, the corporation and its officers subjected themselves to the penalties provided in the act. But that is far from saying that the corporation could plead its ultra vires act as a defense to a suit on the bonds at the instance of one who received them in good faith. The basis of the plaintiff's claim is a valid obligation against the defendant company in payment of which he says he was induced to accept bonds upon the representation that they were valid obligations of the company; but he fails to show that they were not valid obligations of the company.

In People ex rel. D. & H. Co. v. Stevens, 197 N. Y. 1, 90 N. E. 60, it was held that the Public Service Commission was not justified in denying the application of the relator for an order to issue bonds in payment of valid obligations of the company. The question arose in that case on certiorari, and the indebtedness had been incurred when the application was made; whereas, in this case, the order of the commission was made before the obligation was incurred. It may be that the defendant company had no right in defiance of the order to incur the obligation; but the plaintiff must stand upon the proposition that it was valid and enforceable. If so, the defendant corporation had the right to pay it. The plaintiff accepted a specialty for a simple contract debt. Unfortunately the corporation became insolvent; but there is no connection between that and the alleged misrepresentations. The plaintiff would be in no better position if the Public Service Commission had actually authorized the issuance of bonds to pay his claim for commissions. He has an enforceable claim. His inability to collect it results from the insolvency of the company, not from the said representations. The fact that he might have exacted payment in cash does not affect the case.

The interlocutory judgment should be reversed, with costs, and the demurrer sustained, with costs, with the usual leave to the plaintiff to plead over on payment of costs. All concur.